**CYNDEE L. PETERSON**
Assistant U.S. Attorney
**MORGAN E. SHAW**
Student Intern
U.S. Attorney's Office
P.O. Box 8329
Missoula, MT 59807
105 E. Pine, 2nd Floor
Missoula, MT 59802
Phone: (406) 542-8851
FAX: (406) 542-1476
Email: Cyndee.Peterson@usdoj.gov
**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| UNITED STATES OF AMERICA, | CR 13-31-M-DLC |
|---|---|
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| vs. | |
| KELLY R. ETZEL, | |
| Defendant. | |

The United States of America, by and through Cyndee L. Peterson, Assistant United States Attorney for the District of Montana, submits the following sentencing memorandum and recommendation.

## I. INTRODUCTION

Kelly Etzel is a fifty-two year old female who comes before the Court for sentencing. Etzel faces sentencing for her conviction for knowingly distributing a Schedule II substance, without a legitimate medical purpose and not in the usual course of her professional practice, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Etzel pleaded guilty to Counts II and XI of the Indictment and was released on conditions pending sentencing. The government will move to dismiss Counts I and III through X of the Indictment. The U.S. Probation Office prepared a presentence report (PSR) dated February 19, 2014, that outlines the nature of the offense, discusses statutory sentencing factors, and reviews Etzel's personal history and characteristics. Etzel filed objections to the presentence report which are set forth in the PSR addendum.[1] The government has no objections to the presentence

---

[1] The government's response to the defendant's objections are addressed later in this memorandum.

report and agrees with the Probation Office's calculation of the defendant's guideline range.

Initially, Etzel came under scrutiny during an investigation conducted by the Missoula Police Department into prescription drug abuse. PSR ¶ 12. The Department investigated Etzel's prescription practices, interviewed numerous clients, and enlisted a confidential informant for the purpose of obtaining prescription drugs outside the defendant's professional course of conduct. PSR ¶ 12. The Drug Enforcement Administration (DEA) became involved in the investigation after detectives advised them that the defendant was providing large quantities of controlled substances to known drug addicts. PSR ¶ 13.

On June 7, 2012, an officer conducted an undercover visit at First Choice Clinic for the specific purpose of acquiring Oxycodone from Etzel. PSR ¶ 14. Etzel, who suspected that the officer was a drug smuggler, provided the agent with a prescription for Oxycodone without exercising due diligence to ascertain the nature of his purported malady—stiff shoulders. PSR ¶ 14. Then, on August 1, 2012, that same officer conducted a second undercover visit and the defendant again supplied

prescriptions without conducting a physical examination.  PSR ¶ 15. Knowing the agent intended to sell the drugs, Etzel wrote prescriptions to fictitious names and accepted $1,000 in return.  PSR ¶ 15. Moreover, Etzel encouraged the officer to take one of her prescription pads and discussed ways that he could avoid being caught.  PSR ¶ 15.

## II. CONTEXT FOR SENTENCING

The statutory maximum sentence this offense carries is 20 years imprisonment, a $1,000,000 fine, and three years supervised release, with no mandatory minimum incarceration.  PSR ¶ 83.  The February 19, 2014 PSR calculates the base offense level—20, and the correct criminal history—I.  PSR ¶ 83.  In addition, the PSR calculates a two-point enhancement under U.S.S.G. § 3B1.3 for an adjusted offense level of 22.  PSR ¶ 49, 51.  The defendant has qualified for a two-point deduction pursuant to U.S.S.G. § 3E1.1(a) and the government recommends an additional one point deduction for timely notification of plea.  PSR ¶ 52, 53.  Thus, the report sets forth the total offense level of 19.  PSR ¶ 55.  Given those calculations, the defendant's advisory guideline range is 30 to 37 months.

## III. THE GOVERNMENT'S POSITION

Ultimately, the reasonableness of a sentence must be determined considering the factors listed in 18 U.S.C. § 3553(a). *U.S. v. Booker*, 543 U.S. 220, 261 (2005); *U.S. v. Waknine*, 543 F.3d 546, 554 (9th Cir.2008). The government urges the Court to impose a sentence of 30 months imprisonment, the low end of the guideline range, to be followed by 3 years of supervised release.

### A. Imprisonment

The Court must consider the history and characteristics of the defendant in fashioning an appropriate sentence. *See* 18 U.S.C. § 3553(a)(1). Etzel is 52 years old, is married, and has four grown children. PSR ¶¶60, 63, 65. Etzel had a normal childhood, has no mental health problems, and has no known substance abuse problems. PSR ¶¶ 60, 66, 67. Etzel received her GED in 1989 and attended the University of Montana from 1989 to 1994. PSR ¶ 70. In 1996, she obtained her Associate's Degree of Physician's Assistant. PSR ¶ 70. Etzel was certified as a physician's assistant (PA-c) with the Montana

5

Board of Medical Examiners from June 1997 until the current charges were brought in October 2013. PSR ¶ 70.

In this case, Etzel's personal characteristics add to the egregiousness of her conduct. She is a well-educated individual with no drug addictions, family support, and strong ties to the community. While her intentions are not clear, it is obvious that she took advantage of her position to prescribe drugs outside of the scope of her profession, knowing that she was complicit in providing drugs to the community. PSR ¶ 14. As part of the charged conduct, Etzel prescribed medications to an undercover agent, believing that he was a drug smuggler. PSR ¶ 14. When she met with the undercover agent a second time, she accepted $1,000 in exchange for providing fraudulent prescriptions. PSR ¶ 15. Etzel comes before this Court as a woman, apparently motivated by greed, acting in the course of a trusted position to unlawfully distribute prescription drugs within the community.

The Court must consider the need for the sentence to be imposed to reflect the seriousness of the offense, to promote the respect for the law, to provide just punishment for the offense, to afford adequate deterrence,

and to protect the public.  18 U.S.C. § 3553(a)(2).  In the case of drug distribution, the government has a compelling interest to protect society from prescription drug abuse.

"Prescription drug abuse is the Nation's fastest-growing drug problem."[2]  The National Survey on Drug Use and Health shows that while use of some illegal drugs like cocaine has decreased, nearly one-third of people aged 12 or over used drugs for the first time by using a prescription drug non-medically.[3]  Providers and clinics that dispense prescription drugs under the banner of medical care "not only endanger the individuals receiving these medications, but also pose serious threats to the communities where they are located."[4]  Prescription medications cure diseases, ease suffering, improve quality of life, and save lives, but when misused have the potential for abuse, diversion, and morbidity.[5]

---

[2] Executive Office of the President of the United States, *Epidemic: Responding to America's Prescription Drug Abuse Crisis*, pg. 1, available at: http://www.whitehouse.gov/sites/default/files/ondcp/issues-content/prescription-drugs/rx_abuse_plan.pdf; (accessed Feb. 20, 2014); citing *Results from the 2009 National Survey on Drug Use and Health: National Findings*, SAMHSA (2010).
[3] *Id.* at 1.
[4] *Id.* at 8.
[5] *Id.* at 10.

For these reasons, aggressive enforcement actions against prescribers who are not prescribing within the usual course of practice and not for legitimate purposes are necessary.[6]

The sentencing guidelines reflect the significance of the harm that occurs when medical professionals abuse their high level of discretion. Section 3B1.3 of the United States Sentencing Guidelines provides that "[i]f the defendant abused a position of public or private trust … in a manner that significantly facilitated the commission or concealment of the offense," the defendant's base level must be increased by two levels. U.S.S.G. § 3B1.3 (2011). In this context, "practicing physicians enjoy perhaps the highest level of discretion afforded any professional." *U.S. v. Adams*, 70 F.3d 776, 782 (4th Cir. 1995). As a certified PA-c, Etzel possessed knowledge, experience, and certification not possessed by members of the general public. She used her position to dispense prescription drugs to individuals seeking medications, without conducting medical examinations. Thus, she abused the discretion—accorded to her by the nature of her medical profession—to act outside the scope of her responsibilities and endanger her community.

---

[6] *Id.* at 8.

Obviously, the seriousness of the offense cannot be overstated. In addition to the charged offenses, further investigation revealed that the defendant engaged in an extensive scheme to distribute prescription drugs outside of the ordinary course of her dealings as a PA-c for at least six years. From 2006 to 2008, the defendant prescribed C.H. narcotics approximately 22 times. PSR ¶ 22. C.H. and the defendant eventually reached a pills-for-plans agreement, where C.H. provided the defendant construction plans for a new facility and she, in exchange, wrote him prescriptions without conducting physical examinations. PSR ¶ 22. In 2009, the defendant began to provide prescriptions to J.P. without conducting a physical examination even though he never complained of pain and admitted he was addicted to drugs. PSR ¶ 23. From 2009 to 2010, the defendant prescribed J.D. with hundreds of prescriptions, having only examined him on two occasions. PSR ¶ 24. As a result, J.D. developed an addiction to pain medication, of which the defendant was aware. PSR ¶ 24.

In 2010, the defendant prescribed approximately 50 to 60 Lortab to A.W., despite the fact that he admitted a drug addiction and she never

physically examined him.   PSR ¶ 18.   A.W. stated that he specifically went to the defendant's clinic because she prescribed him any medications he wanted.   PSR ¶ 18.   Also in 2010, the defendant prescribed medications to D.M.—in her boyfriend's name—without conducting physical examination.   PSR ¶ 25.   The defendant provided the prescription to D.M. so that when her parole officer checked her bottle, she would have the correct number of pills remaining.   PSR ¶ 25. Later in 2010, the defendant prescribed Klonpin, Reglan, and Lortab to a confidential informant (CI) without any physical examination.   PSR ¶ 19, 20.   The CI explained that he was having addiction issues and did not give a medical purpose for the visit.   PSR ¶ 19, 20.

On May 10, 2012, an officer conducted an undercover visit at First Choice Clinic for the specific purpose of obtaining prescription medications from the defendant outside the scope of her professional practice.   PSR ¶ 31.   The officer complained that he had a sore shoulder from playing his guitar and the defendant provided the officer with prescriptions for Robaxin, Flexeril, and Lortab without conducting a physical examination.   PSR ¶ 31.   Then, on July 19, 2012, that same

officer conducted another undercover visit and the defendant again supplied prescriptions without conducting a physical examination. PSR ¶ 32. The defendant explained to the agent that she would even write "get of jail free cards" to certain patients on probation that had recently tested positive in order to keep them out of jail. PSR ¶ 32.

Agents first traveled to First Choice Clinic in Missoula, Montana to speak with Etzel on November 8, 2012. Etzel agreed to speak with the investigators and subsequently agreed to surrender her DEA privileges. PSR ¶ 33. On November 13, 2013, Etzel's DEA privileges were entered into the system as "out of business—Surrender for Cause." PSR ¶34. However, on January 8, 2013, agents received a report from the Montana Prescription Drug Registry which listed a total of 85 prescriptions *issued* by Etzel *after* she had surrendered her DEA registration. PSR ¶ 37.

Ultimately, the defendant's conduct demonstrates a disregard for the safety of both the patients who visited her and the community as a whole. Under the aegis of her profession, the defendant knowingly and purposefully engaged in a pattern and practice of providing controlled substances to patients without conducting physical examinations—time

11

and time again demonstrating a lack of due regard for the heightened responsibilities her position afforded her.

A sentence of 30 months would sufficiently address the seriousness of her offense, promote respect for the law, provide just punishment, adequately deter the defendant and others, and protect the public. *See* 18 U.S.C. § 3553 (a)(2). Furthermore, it would avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct. U.S.C. § 3553 (a)(6).

### B. Supervised Release

The guideline range for a term of supervised release is three years. PSR ¶ 86; *see* U.S.S.G. § 5D1.2. If a sentence of imprisonment for one year or less is imposed, a term of supervised release is not required but is optional. PSR ¶ 86; *see* U.S.S.G. § 5D1.1(b). Supervised release is required if the Court imposes a term of imprisonment of more than one year or when required by statute. PSR ¶ 86; see U.S.S.G. § 5D1.1(a). In determining the term of supervised release, the Court must consider the factors set forth in §§ 3553 (a)(1), (a)(2)(C), (a)(4), (a)(5), (a)(6), and (a)(7). 18 U.S.C. § 3583(c). Based on the nature of the present offense,

it is clear that the defendant has a disregard for positions of trust within the community. Furthermore, as demonstrated by her conduct after she surrendered her DEA registration, revoking Etzel's PA-c certification would not be sufficient to deter her from providing prescriptions without authority. In this case, a term of three years of supervised released would be appropriate to ensure that Etzel does not have the opportunity to distribute prescription drugs.

## IV. UNITED STATES' RESPONSE TO OBJECTIONS

The defendant provided two objections to the PSR. As noted above, the government believes the presentence report, as currently authored, reflects the correct base offense level and relevant conduct, and correctly applies the adjustment for "Abuse of Trust."

### A. Relevant Conduct

The government maintains that the presentence report accurately establishes that the defendant's criminal activity involved the equivalent of 55.6729 kilograms of marijuana, setting a base level of 20, according to the Drug Quantity Table under U.S.S.G. § 2D1.1(c)(10). Under the guidelines, the relevant quantity of controlled substances is not limited

to the amount of illegal drugs directly involved in the offense of the conviction.  *U.S. v. Nakagawa*, 924 F. 2d 800, 803 (9th Cir. 1991).  Under U.S.S.G. § 1B1.2(b), federal sentencing courts should determine the pertinent amount of drugs in accordance with the principles of "relevant conduct" set forth in U.S.S.G. § 1B1.3.

In determining whether conduct is "relevant" within the meaning of U.S.S.G. § 1B1.3, "the sentencing court is to consider such factors as the nature of the defendant's acts, his role, and the number and frequency of repetitions of those acts in determining whether they indicate a behavior pattern."  *U.S. v. Santiago*, 906 F. 2d 867 (2d Cir. 1990).  Thus, the factors the court must consider are similarity, regularity, and temporal proximity.  *U.S. v. Hahn*, 960 F.2d 903 (9th Cir. 1991).  However, these factors are not conjunctive; when one factor is absent, the court must consider stronger presence of at least one other component.  U.S.S.G. § 1B1.3, cmt. 9.

In this case, an objective look at the number and nature of transactions that fall into the general timeline of 2006 to 2012 indicates that Etzel was engaged in the pattern and practice of prescribing

controlled substances to patients without exercising due diligence to ascertain the true nature of their purported maladies.

In any case, even if this court determines that the activity involved 53.285 kg, as the defendant proposes, the base offense level remains the same. Under U.S.S.G. § 2D1.1 (c)(10), amounts within the 40-60 range are an offense level of 20, which, when adjusted accordingly, still establishes a total offense level of 19.

**B. Position of Trust**

Once again, the government believes that the presentence report is accurate and that two points should be added to Etzel's offense level under U.S.S.G. § 3B1.3 because Etzel occupied a position of trust. On its face, the guideline only requires that (a) "the defendant abused a position of public or private trust" and (b) the defendant did so "in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3 (2011).

Courts in this circuit employ a simple two-step test to determine whether an abuse of trust enhancement under § 3B1.3 is appropriate. *U.S. v. Laurienti*, 731 F.3d 967, 973 (9th Cir. 2013), citing *U.S. v.*

*Contreras*, 581 F.3d 1163, 1164-65 (9th Cir. 2010). To apply the enhancement, the court must find that the defendant (1) occupied a position of trust, and (2) used that position to facilitate or conceal the offense. *Id*. No extensive analysis is necessary here. Etzel admits the two prongs are satisfied. *See* PSR Addendum, p. 3.

In this case, the defendant argues that, in addition to the test set forth by this court in *Laurienti*, there is a third step to the test which requires a "trust relationship" between the defendant and the victims as "analyzed from the perspective of the victims." *See* PSR Addendum, p. 3, citing *U.S. v. Evans*, 370 Fed. Appx. 829, 832 (9th Cir. 2010). The guideline itself unambiguously does not require a "trust relationship." *See*, *e.g.*, *U.S. v. Luna-Diaz*, 222 F.3d 1, 3 (1st Cir. 2000). The Commentary and Application Notes to § 3B1.3 are as silent on the reputed "trust relationship" requirement as the guideline itself. Indeed, the Commentary's definition of a "position of public or private trust"—one "characterized by professional or managerial discretion"—makes clear that the determining factor is the amount of discretion the defendant has by virtue of his or her position, and not the relationships the defendant creates as a result of that position. U.S.S.G. § 3B1.3 (2011), cmt. 1. In

16

this circuit, courts have held that the presence or lack of "professional or managerial discretion" represents the decisive factor in deciding whether a defendant occupied a position of trust. *Laurienti*, 731 F.3d at 973 (quoting *Contreras*, 581 F.3d at 1168).

Furthermore, courts in this circuit have held that "abuse of the fundamental trust between a doctor and patient is precisely the sort of behavior to which section 3B1.3 is directed." *U.S. v. Barnes*, 125 F. 3d 1287, 1292 (9th Cir. 1997). In *U.S. v. Feingold*, the defendant, a doctor, admitted that he distributed drugs under the aegis of being a licensed naturopathic physician, and he admitted that he actually prescribed the quantities of drugs alleged. *U.S. v. Feingold*, 454 F.3d 1001, 1013 (2006). The court held that the sentence enhancement was appropriate because the defendant abused his position of trust by distributing drugs. *Id.*

While this circuit has not specifically addressed whether a PA-c occupies a position of trust, case law is replete with examples of defendants occupying similar positions with respect to public health. Although PA-cs may not exercise the same degree of discretion as the physician in *Feingold*, they are responsible for ensuring that each

17

prescription is not fraudulent and is filled with the correct medication and dosage.   Furthermore, PA-cs are subject to significantly less supervision than other employees.   U.S.S.G. § 3B1.3, cmt. 1.   In this case, the defendant was in a position which was subject to less supervision and she has admitted to prescribing drugs under the aegis of her position.   Hence, the defendant engaged in precisely the kind of behavior to which the adjustment is directed.

## C. CONCLUSION

The Court should impose a sentence of 30 months to be followed by three years of supervised release.   The defendant has repeatedly proven herself to be a danger to the community.   This term of imprisonment will address the seriousness of the offense while considering the history and characteristics of the defendant.

DATED this 25th day of February, 2014.

MICHAEL W. COTTER<br>
United States Attorney<br>
<br>
<i>/s/ Cyndee L. Peterson</i><br>
Assistant U.S. Attorney<br>
Attorney for Plaintiff

CERTIFICATE OF COMPLIANCE

Pursuant to L.R. CR 47.2(c) the word count of the attached brief contains 3,160 words, excluding caption, and certificates of service and compliance.

        MICHAEL W. COTTER
        United States Attorney

        /s/ Cyndee L. Peterson
        Assistant U.S. Attorney
        Attorney for Plaintiff

# CERTIFICATE OF SERVICE

\* \* \*

I hereby certify that on February 25, 2014, a copy of the foregoing document was served on the following persons by the following means:

1,2    CM/ECF
\_\_\_\_\_Hand Delivery
\_\_\_\_\_Mail
\_\_\_\_\_Overnight Delivery Service
\_\_\_\_\_Fax
\_\_\_\_\_E-Mail

1. Clerk, U.S. District Court

2. Paul Ryan
   Nathaniel S. Holloway
   Paul Ryan & Associates
   218 E Front Street Suite 210
   Missoula, MT 59802

*/s/ Cyndee L. Peterson*
Assistant U.S. Attorney