**Paul T. Ryan**
**Nate S. Holloway**
PAUL RYAN & ASSOCIATES, PLLC
218 E. Front St., Suite 210
Missoula, MT 59802
Telephone: (406) 542-2233
Fax: (406) 542-7012
Email: pryan@paulryanlaw.com
nholloway@paulryanlaw.com

*Attorneys for Defendant Kelly R. Etzel*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 13-31-M-DLC |
| Plaintiff, | |
| vs. | **DEFENDANT'S** |
| KELLY R. ETZEL, | **SENTENCING MEMORANDUM** |
| Defendant. | |

COMES NOW, Kelly R. Etzel, by and through her counsel of record, Paul T. Ryan of Paul Ryan and Associates, PLLC, and hereby submits this Memorandum in aid of sentencing.

## I. Introduction

Kelly Etzel is a fifty-two year old wife and mother of four. Mrs. Etzel's third youngest child, Blake, is developmentally delayed, legally blind, and lives with a

serious heart defect. Mrs. Etzel is his sole care provider. Mrs. Etzel 's father suffers from terminal lung cancer and is planning to move into Mrs. Etzel 's home for hospice treatment. Currently, Mrs. Etzel provides daily care to her father. Mrs. Etzel will appear before this Court on March 6, 2014 for sentencing following her guilty pleas to two counts of Distribution of Controlled Substances in violation of 21 U.S.C. § 841(a).

Mrs. Etzel contends that this Court is authorized to grant significant leniency through either a downward departure from the United States Sentencing Guidelines (U.S.S.G.), or through a variance in light of considerations provided for in 18 U.S.C. § 3553(a). Mrs. Etzel respectfully requests this Court grant her a lenient sentence in light of her imperative family responsibilities, and exceedingly low risk of recidivism.

In this case, the underlying policies that guide the U.S.S.G would be best satisfied by imposing a minimal term of home incarceration, followed by supervised release. Such a punishment prevents Mrs. Etzel's family from needless suffering otherwise imposed by incarceration in a Federal prison. Home confinement will allow Mrs. Etzel to continue to act as sole care provider for her developmentally delayed son, Blake, as well as allow Mrs. Etzel to care for her ailing father.

## II. Analysis

### A.  Sentencing Procedure

Title 18 U.S.C. § 3553(a) requires the District Court to impose a sentence sufficient but not greater than necessary to achieve the statutory purposes of punishment, justice, deterrence, incapacitation, and rehabilitation.  As such  this Court should consider the following:

- The nature and circumstance of the offense;
- The history and characteristics of Mrs. Etzel (including her personal characteristics and important family responsibilities);
- The need for the sentence imposed:
  -To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense,
  -To afford adequate deterrence to criminal conduct,
  -To protect the public from further crimes, and
  -To provide a defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
- The kinds of sentences available;
- The kinds of sentence and the sentencing range established;
- Any pertinent policy statements;
- The need to avoid unwarranted sentencing disparities among defendants with similar conduct;  and
- The need to provide restitution to any victims of the offense.

Sentencing is therefore an individualized process.  An appropriate sentence balances the unique characteristics of the defendant against the punishment goals underlying the policies of the U.S.S.G.  This Court should begin all sentencing proceedings with a calculation of the applicable Guidelines, and determine a sentencing range.  *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 596 (2007).

The Guidelines are not mandatory, but are considered a factor in determining a sentence. *United States v. Booker*, 543 U.S. 220 (2005). Moreover, 18 U.S.C. § 3553(a) does not direct this Court to give the sentencing guidelines more consideration than any other factor. In *Gall*, the Supreme Court held,

> "The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable." *Id*. at 596-597.

Being that the Guidelines are neither mandatory, nor do they enjoy the presumption of reasonableness, sentencing proceedings must account for the unique characteristics of each defendant.

## B. Sentencing Factors

Federal law explicitly allows for departure from the Guidelines when "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. 3553(b). Sentencing Mrs. Etzel to a term of imprisonment within the Guidelines effectively severs the only support and assistance her developmentally delayed son, Blake, receives. Imprisoning Mrs. Etzel also denies her terminally ill father the end-of-life support she provides him. Further,

imprisoning Mrs. Etzel disrupts her family's current plans of moving her father into the family home so she can provide 24-hour care for him.

For the ensuing reasons, Mrs. Etzel respectfully requests this Court grant an eleven-level departure from Level 19, to Level 8, under U.S.S.G. § 5H1.6. This would place her in Zone A and allow the Court to substitute prison time with home confinement. *See,* U.S.S.G. §§ 5C1.1(b) and 5C1.1(e).

## 1. Nature and Circumstance of the Offense

Unlike many people convicted of distributing a controlled substance without a legitimate medical purpose, Mrs. Etzel's crimes were not motivated by greed or monetary gain. With the sole exception of an undercover DEA agent urging Mrs. Etzel to accept money for prescription drugs on one occasion, Mrs. Etzel did not benefit financially from her crimes. Mrs. Etzel believes healthcare should be given to everyone, regardless of economic status. Based on this belief, Mrs. Etzel prescribed the controlled substances believing it was the best treatment option for the patient. Mrs. Etzel's transgressions were motivated by benevolence, however misguided, towards those unable to afford healthcare. At no point did Mrs. Etzel act violently towards any person, or attempt to obstruct justice. At no point did she receive any significant financial gain during the six years she was under investigation by the Missoula Police and DEA (with the sole exception of being goaded into accepting money once in exchange for prescription drugs by an undercover DEA agent.) PSR ¶

15. Even then, the money from the undercover agent went into the business funds of the clinic, and not into Mrs. Etzel's personal account.

Without question, Mrs. Etzel violated the law. However, Mrs. Etzel is not the typical criminal trading prescription drugs for cash. Her intentions were misguided, criminal, and inculpate her morally. Mrs. Etzel did not act out of malice, greed, or any other sinister motive. Mrs. Etzel's intentions were only to help those who could not help themselves. As such, Mrs. Etzel's state of mind should be considered when calculating a sentence.

## 2. History and Characteristics of Mrs. Etzel

### a. Personal Characteristics

Mrs. Etzel has a limited criminal history. Her offenses are comprised solely of traffic violations, and two DUIs, ten years apart (one in 1999, and another in 2009). PSR ¶¶ 56-58. Mrs. Etzel has strong ties to the community and has lived in Missoula for the past 48 years. She attended Sentinel High and the University of Montana in Missoula. She has owned several small businesses, and supported her son Blake in the Special Olympics. Mrs. Etzel worked as a traveling Physician Assistant for a number of years providing care to patients in Poplar, Wolf Point, Superior, and Glasgow. Mrs. Etzel also owned the "Bella Sauvage" day spa in Missoula for approximately eight years, before selling the business in 2012. In the early 2000's Mrs. Etzel opened an urgent care walk-in clinic named "First Choice." In addition to

caring for Blake, Mrs. Etzel has worked approximately 80 hours per week, running the clinic for the last ten years. As a result of the instant criminal offenses, Mrs. Etzel has lost all means of providing for herself financially. She and Blake rely solely on her husband's income.

### b. Family Responsibilities

Section 5H1.6 of the Guidelines provides, "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." However, Application Note 1(B) to § 5H1.6 holds:

> "A departure under this policy statement based on the loss of caretaking or financial support of the defendant's family requires, in addition to the court's consideration of the non-exhaustive list of circumstances in subdivision (A), the presence of the following circumstances:
>
> (i) The defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family.
>
> (ii) The loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant….
>
> (iii) The loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to the defendant's family.
>
> (iv) The departure effectively will address the loss of caretaking or financial support."

Elaborating on this particular downward departure, the 9th Circuit has held, "Permissible downward departures generally involve situations where the defendant is an *irreplaceable* caretaker of children, elderly, and/or seriously ill family members,

and the extent of the departure appropriately serves to protect those family members from the impacts of the defendant's prolonged incarceration." *United States v. Leon*, 341 F.3d 928, 931 (2003).

Mrs. Etzel is an irreplaceable caretaker for her son. Blake is developmentally delayed, legally blind, and has a serious heart defect. He functions at an 11-12 year old level, and is incapable of living on his own. He resides with Mrs. Etzel. Blake has undergone five open-heart surgeries to date. Blake has thus far outlived doctors' predictions regarding the length of his life. Mrs. Etzel administers his medications, and is his source of transportation to and from medical appointments and work. Blake's numerous conditions also require travel to Seattle for treatment. Mrs. Etzel is his sole care provider and Blake simply cannot function without her. Mr. Etzel is unable to provide for Blake in a similar manner due to his obligations regarding his business.

Additionally, Mrs. Etzel provides hospice care to her terminally ill father. Mrs. Etzel typically spends time 3-5 days per week providing and caring for her father. She keeps his home in order, handles his personal care, meals/groceries, and shopping. Currently, Mrs. Etzel's family plans on having her father move into their home so she can more efficiently care for both Blake and her father.

Sentencing Mrs. Etzel to time in Federal Prison will cause a substantial, direct, and specific loss of essential caretaking to both Blake and her father. Further, the

loss of caretaking substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant.  If Blake were a normally functioning 25 year old that happened to live at home, this downward departure would not be warranted. Blake cannot live alone, functions at an 11-12 year old level, has a serious heart defect, and is legally blind.  Sentencing Mrs. Etzel to incarceration significantly exceeds the harm ordinarily present for most defendants. There is simply no replacement for Mrs. Etzel as Blake's caretaker.  By granting a downward departure and sentencing Mrs. Etzel to home confinement, this Court saves Blake from significant hardship, not normally found in other similarly situated defendants.

### c.  The Need for the Sentence Imposed

### (i)  Reflect Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense

Notwithstanding the punishment ordered by this Court, Mrs. Etzel has already suffered consequences for her actions.  As a 52 year old mother of four with minimal criminal history, any sentence of imprisonment or home incarceration is severe. Regardless of the ordered sentence, Mrs. Etzel has already lost her medical license, her business, her primary source of income, and has been forced into filing bankruptcy.  PSR ¶ 71.  Prior to the instant offenses, Mrs. Etzel ran the First Choice Clinic, with several locations throughout Montana.  Her sole source of income at the time she was charged was from the First Choice Clinic.  As a result of her indictment,

Mrs. Etzel has lost her business and all of her income from the First Choice Clinic. Moreover, Mrs. Etzel has lost her medical license and will never practice medicine again. Without a means to support herself, Mrs. Etzel has been forced into filing bankruptcy. The consequences resulting from Mrs. Etzel's criminal conduct have already served to materially punish her.

In addition to the foregoing punishments, Mrs. Etzel will be categorized as a felon for the rest of her life and will suffer all of the consequences of that legal status.

### (ii) Afford Adequate Deterrence to Criminal Conduct

Deterrence is both general and specific. The policy underlying specific deterrence has already been satisfied. Mrs. Etzel lost her license to distribute prescription drugs as of October, 2012. As a result, Mrs. Etzel has no current means of income. The indictment and ensuing charges against Mrs. Etzel have caused significant emotional distress. Mrs. Etzel currently suffers from depression and insomnia. Mrs. Etzel also suffers from anxiety relating to her current criminal proceedings. PSR ¶ 66. These conditions have been exacerbated by her current legal predicament. The initiation of criminal proceedings and loss of her medical license, have already served to punish to Mrs. Etzel and to deter her from future criminal conduct.

General deterrence seeks to discourage others from similar behaviors committed by Mrs. Etzel. In one sense, the general public will not be deterred by any

punishment dealt to Mrs. Etzel as the general public does not have the authority to write prescriptions. In this case, the people who are deterred from committing similar criminal acts are those with the authority to write prescriptions. Considering this fact, Mrs. Etzel's bar from writing prescriptions has effectively ended her medical career. In addition to the criminal punishment ordered by this Court, that fact alone serves as a clear warning and deterrent to the medical community that behavior such as Mrs. Etzel's will not be tolerated.

### (iii) Protect the Public

The public requires no protection from Mrs. Etzel. This consideration is simply not important in the case at bar. Mrs. Etzel is non-violent, and has limited criminal history. Mrs. Etzel can no longer write prescriptions or practice medicine. Any "threat" she may have posed as a Physician's Assistant is squarely neutralized by her inability to prescribe controlled substances.

Additionally, the U.S.S.C. has determined that age is a meaningful indicator of reduced risk of recidivism. As the U.S.S.C. notes, "recidivism rates decline relatively consistently as age increases." U.S.S.C., *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines Front*, at 12 (2004). Specifically, "offenders over age 50 have a recidivism rate of 9.5 percent." *Id*. Mrs. Etzel is 52 years old. Her age and inability to further prescribe medication make her exceedingly unlikely to reoffend.

### (iv) Provide Mrs. Etzel with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

Mrs. Etzel requires no additional educational or vocational training, nor does she need specialized medical care. Mrs. Etzel does not suffer from drug or alcohol abuse.

## III. Guideline Objections

The United States Probation Office has calculated an advisory guideline range of 30-37 months. This is based on an adjusted offense level of 22, and a criminal history category of I. PSR ¶ 55, 59.

As argued in Mrs. Etzel 's Letter of Objection, Mrs. Etzel does not believe she should receive a two level adjustment under U.S.S.G. § 3B1.3 for Abuse of a Position of Trust. Specifically, the § 3B1.3 requires that there be a victim. *See*, *United States v. Laurienti* 731 F.3d 967, 973 (9th Cir. 2013) and *United States v. Evans*, 370 Appx. 829, 832 (9th Cir. 2010) ("To support the abuse of trust enhancement, 'a position of trust . . . *must be established from the perspective of the victim"*). As the PSR notes, "there is no identifiable victim in the instant offense." PSR ¶ 42. Accordingly, Mrs. Etzel contends her Total Offense level is actually 17, and the correct guideline range is actually 24-30 months.

Mrs. Etzel withdraws her objection to the marijuana inclusion from ¶ 41of the Presentence Investigation Report.

## IV.    Conclusion

Each defendant and their criminal transgressions are unique. The Supreme Court wrote in *Gall*, "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall* at 52, citing *Koon v. United States*, 518 U.S. 81, 98, 116 S. Ct. 2035 (1996).

A term of incarceration, via house-arrest, is sufficient to uphold the policies underlying both the Federal Criminal Code, and the U.S.S.G.   Mrs. Etzel has already lost her medical license, her business, her primary source of income, and has been forced to file bankruptcy.   Mrs. Etzel understands her request for leniency is substantial, however it is necessary for her to continue to provide for her son Blake and her terminally ill father.   A term of imprisonment in a Federal Prison immeasurably harms Blake.

Accordingly, Mrs. Etzel requests an eleven-level departure under U.S.S.G. §5H1.6 and asks that this Court substitute home confinement for imprisonment in a Federal Prison.

## V. Notice of Witnesses

The defense anticipates calling the following witnesses on Mrs. Etzel's behalf:

- Robert Etzel –husband

- Sean Etzel - son

- Wesley Etzel - son

- Blake Etzel - son

- Shan Guisinger, PHD – treating psychologist

- Lisa Dameron – former patient

- Carl Smith – former patient

Respectfully Submitted this 25th day of February, 2014.

PAUL RYAN & ASSOCIATES, PLLC

By: */s/ Paul T. Ryan*
Paul T. Ryan,
Attorney for Defendant

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 25th day of February, 2014, a copy of the foregoing

document was served on the following persons by the following means:

 1,2  CM-ECF
_____Hand Delivery
_____Mail
_____Overnight Delivery Service
_____Fax
_____E-mail

     1.     Clerk, U.S. District Court
            Russell Smith Courthouse
            201 E. Broadway
            Missoula, MT 59802

     2.     Cyndee  L. Peterson
            U.S. Attorney's Office
            P.O. Box 8329
            Missoula, MT 59807

            Atttorney for Plaintiff

By: _*/s/ Paul T. Ryan*_____
Paul T. Ryan,
Attorney for Defendant